IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| BARBARA J. WINGARD, individually and As Administratrix of the Estate of TROY ROBERT LEE HOOFTALLEN, Plaintiffs, vs. PENNSYLVANIA STATE POLICE; COMMONWEALTH OF PENNSYLVANIA; TASER INTERNATIONAL, INC.; GUY A. BASTESTILLI; STEVEN E. JOHNSON, Defendants. | Civil Action No. 12-1500 Judge Cathy Bissoon/ Magistrate Judge Maureen P. Kelly Re: ECF No. 18 |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

Plaintiff Barbara J. Wingard, individually and as Administratrix of the Estate of Troy Robert Lee Hooftallen ("Plaintiff"), brings this civil rights, strict products liability, wrongful death and survival action against the Pennsylvania State Police ("State Police"); the Commonwealth of Pennsylvania (the "Commonwealth"); two Pennsylvania State Troopers, Guy A. Bastestilli and Steven E. Johnson; and Taser International, Inc. Plaintiff alleges federal statutory claims against the State Police and the Commonwealth pursuant to 42 U.S.C. § 1983 ("Section 1983"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"); and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"). Defendants State Police and the Commonwealth have filed a Motion to Dismiss Plaintiff's claims brought pursuant to the ADA and the RA (Count III) as well as the claims for Wrongful Death and Survival (Count V

1

and VI) pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. For the following reasons, is respectfully recommended that the Motion to Dismiss, ECF No. 18, be denied.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in the Amended Complaint are disconcerting, and at this stage of the case, are taken as true. Plaintiff alleges that the decedent, Troy Robert Lee Hooftallen, was a young man who suffered from a number of medical conditions, including depression, Crohn's Disease, ulcerative colitis and other bowel disorders. [ECF No. 14, ¶¶ 19-23]. On the evening of October 18, 2010, he was at his girlfriend's home in Gaskill Township, Jefferson County, Pennsylvania. At approximately 11:20 p.m., Hooftallen's girlfriend found him to be confused and disoriented. The girlfriend and family members decided that Hooftallen needed emergency medical treatment and called 911. They informed the dispatcher that Hooftallen was having a bad reaction to medication. [ECF No. 14, ¶¶ 24-26].

Pennsylvania State Troopers and an ambulance were dispatched. Defendant State Troopers Battestilli and Johnson arrived ahead of the ambulance. [ECF No. 14, ¶¶ 27-28].

Plaintiff alleges that upon their arrival, Defendant State Troopers Battestilli and Johnson were informed that Hooftallen was not violent, that he was "messed up" because of his medication and that he did not want to go to the hospital. [ECF No. 14, ¶¶ 28-30]. The State Troopers were also advised that Hooftallen had tried to commit suicide a few weeks earlier. [ECF No. 14, ¶ 31]. The Amended Complaint alleges that Hooftallen was seated on a sofa, confused and anxious, and speaking with his mother. [ECF No. 14, ¶ 33]. Defendants Battestilli and Johnson teased and taunted Hooftallen, until he "took a swing at one of the troopers." [ECF No. 14, ¶ 34].

The Amended Complaint alleges that in response to Hooftallen's behavior, Defendants Battestilli and Johnson tackled Hooftallen, causing him to strike his forehead hard on a counter, and then pressed his face into the cushions of a sofa. [ECF No. 14, ¶¶ 35-36]. Defendant Battestilli then tasered Hooftallen in the upper back, near the heart. [ECF No. 14, ¶ 37]. Defendants Battestilli and Johnson restrained Hooftallen on the floor with one knee on his neck or throat and another knee in the middle of his back. [ECF No. 14, ¶ 38]. Hooftallen stated "Ok, ok, I'm done – I'm done," and was handcuffed and shackled; however, either Battestilli or Johnson continued to kneel on Hooftallen's back and throat. [ECF No. 14, ¶¶ 42-44]. Hooftallen was repeatedly tasered at least seven more times, and Defendants continued to restrain him with a knee on Hooftallen's throat, neck and back until Hooftallen lost consciousness. [ECF No. 14, ¶¶ 42-44].

After losing consciousness, Battestilli and Johnson continued to apply pressure to Hooftallen's neck and back, compressing his airway. When questioned as to why they continued to apply pressure to Hooftallen's neck, throat and back after he was unconscious, the State Troopers responded that after he regained consciousness, he would start resisting again. [ECF No.14, ¶¶ 49-50]. A family member asked Battestilli and Johnson to check Hooftallen's breathing, and it was discovered that he was in respiratory and cardiac arrest. [ECF No. 15, ¶ 51]. Defendants Battestilli and Johnson called for an ambulance, but failed to perform cardio-pulmonary resuscitation ("CPR") or render any first aid. Instead, the two State Troopers "stood around" for approximately ten minutes, until the ambulance arrived. [ECF No. 14, ¶¶ 52-53]. Ambulance personnel requested the removal of the handcuffs and shackles, and they initiated CPR. [ECF No. 14, ¶¶ 55-56]. Hooftallen was transported to the hospital, where he was

declared brain dead.  Hooftallen was pronounced dead on October 19, 2010.  [ECF No. 14, ¶¶ 57-58].

An autopsy was performed by the Allegheny County Medical Examiner.  He found that Hooftallen:

> died as a result of Atherosclerotic Cardiovascular Disease while being both physically and electrically (TASER) restrained during a physical confrontation with the Pennsylvania State Police.  Positional asphyxia may have also played a role in his demise given witness accounts of the police officers pinning him to the ground in a prone position with their body weight on top of his upper back/neck and thighs.  The acute intoxication of both Dextromethorphan and Guaifenesin (both found in Mucinex DM) played a role in his demise likely causing his acute state of agitation.

[ECF No. 14, ¶ 59].

This action was commenced on October 17, 2010, with an original Complaint identifying two State Police defendants as "John Does."  [ECF No. 1].  Plaintiff alleges that prior to filing her Complaint, written requests for the identity of the involved State Troopers were sent to counsel for the State Police, who refused to provide the information.  Plaintiff was provided a copy of the investigation report after service of the Complaint and the entry of appearance by counsel for the Commonwealth of Pennsylvania.  The report identified Defendants Bastestilli and Johnson as the involved State Troopers and Plaintiff subsequently filed an Amended Complaint. [ECF No. 14].

Defendants State Police and the Commonwealth filed a Motion to Dismiss Counts III, V and VI of the Amended Complaint.  [ECF No. 18].  Count III of the Amended Complaint sets forth ADA and RA claims alleging that Defendants State Police and the Commonwealth have failed to properly train state troopers to respond to encounters with mentally and physically disabled persons, which resulted in discrimination against Hooftallen because of his disability,

4

causing his injuries and, ultimately, his death. Counts V and VI of the Amended Complaint assert wrongful death and survival claims. The Motion to Dismiss is now ripe for review.

**B.    STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).

The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly, the Supreme Court held that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679. In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit provided a two-part test to determine

5

whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' The plaintiff must show 'the allegations of his or her complaints are plausible. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

### C. DISCUSSION

#### 1. ADA and RA Claims

Plaintiff alleges that the State Police and the Commonwealth violated Mr. Hooftallen's right to be free from discrimination on the basis of disability pursuant to the ADA and RA. Specifically, Plaintiff alleges that the State Police failed to make reasonable accommodations to ensure the safe treatment and transportation of a physically and mentally disabled individual suffering from qualifying disabilities of depression, ulcerative colitis and other bowel disorders.

"Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." McDonald v. Pennsylvania, 62 F.3d 92, 95 (3d Cir.1995). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "No otherwise qualified

6

individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of , or be subjected to discrimination under any program or activity received Federal financial assistance…." 29 U.S.C. § 749(a). Although the ADA does not define "programs, services or activities," the RA provides that "'program or activity' means all of the operations of … a department, agency … or other instrumentality of a State or of a local government[.]" 29 U.S.C. § 749(b)(1)(A).

Thus, to state a claim for a violation of either § 504 of Title II of the ADA or the RA, the Plaintiff must allege that Hooftallen "(1) [was] a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." See Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa., 483 F. App'x 759, 762 (3d Cir. 2012); see also Chambers v. School District of Philadelphia Board of Education, 587 F.3d 176, 189 (3d Cir. 2009).

### a. Allegation of "qualified individual with a disability"

With respect to the first prong, Defendants contend that Plaintiff has failed to plead facts establishing that Hooftallen suffered a qualifying disability that substantially limited a major life activity. [ECF No. 19, p. 6]. The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The Amended Complaint alleges that prior to his death,

Hooftallen suffered from depression to such a degree that he had attempted suicide three weeks earlier. It is further alleged that Hooftallen suffered complications related to ulcerative colitis, bowel disorders and Crohn's Disease, and so qualified as a mentally and physically disabled person. [ECF No. 14, ¶¶ 19, 89, 95].

While it is not certain that Hooftallen's conditions will be proven to meet the stringent definition of a "disability" under the ADA or RA,[1] at this early stage of the case it is plausible, given the allegations of depression leading to attempted suicide and serious medical conditions, that Hooftallen had physical or mental impairments that substantially limited his major life activities so as to render him "disabled." Cf, Mohney v. Pennsylvania, 809 F. Supp.2d 384, 401 (W.D. Pa. 2011)(failure to allege that decedent had a record of a mental condition or impairment before the incident is insufficient to establish "disability" within ADA).

### b. Allegation of denial of public entity services

Defendants do not challenge the second element, i.e., the application of either the ADA or the RA to Hooftallen's medical emergency and subsequent arrest. Both the ADA and the RA have been applied to the exercise of police powers in the transportation of mentally and physically disabled person to hospitals for mental health evaluations. Broadwater v. Fow, (No.12-1937), ___ F. Supp.2d ___, 2013 WL 2038806 (M.D. Pa. May 14, 2013); see also Schorr v. Borough of Lemoyne, 243 F.Supp.2d 232, 235–39 (M.D. Pa. 2003) (applying the ADA and

---

[1] See, Johnson v. Amtrak, 390 F. App'x 109, 110 (3d Cir. 2010) (affirming the grant of summary judgment against Plaintiff, an Amtrak passenger, who was denied accommodations, including a sleeper compartment with an attached bathroom, after informing the ticket agent that he suffered from diabetes and ulcerative colitis. The United States Court of Appeals concluded that given plaintiff's ability to travel, maintain employment, feed and clothe himself, plaintiff did not present sufficient evidence that he was disabled as defined by the ADA); Parker v. City of Williamsport, 406 F. Supp.2d 534, 545 (M.D. Pa. 2005)(diagnosis of depression and anxiety is not enough to demonstrate that plaintiff is substantially limited in a major life activity absent evidence that depression was a persistent serious condition).

.

8

§ 504 to police activities and procedures); Yeskey v. Pa. Dep't of Corr., 118 F.3d 168 (3d Cir. 1997) (applying the ADA and § 504 to state prisons).

### c. Allegation of denial of services by reason of disability

With regard to the third prong of an ADA or RA claim, Defendants first challenge whether the Amended Complaint states facts sufficient to make out a plausible claim that the involved State Troopers were motivated to discriminate against Hooftallen because of his purported disability. Defendants, citing Bou v. New Jersey, 2012 WL 1600444 (D.N.J. May 7, 2012), contend that because Hooftallen was experiencing disorienting side effects from medication, the State Troopers were not motivated to discriminate because of his disability, and so cannot state an ADA or RA claim. [ECF No. 19, p. 4].

In Bou, the United States District Court for the District of New Jersey held that where the complaint fails to allege a defendant's contemporaneous knowledge of a Plaintiff's disability, the complaint fails to allege a *prima facie* claim under the ADA or RA:

> First, Plaintiff has not alleged sufficient facts to demonstrate that the Troopers were aware that Plaintiff was disabled. Although the Amended Complaint alleges that the Troopers had a conversation with Nurse Land upon arriving at Sequoia, there is no allegation that the Troopers were informed by Nurse Land or otherwise aware that Plaintiff had a disability. Second, Plaintiff has not sufficiently pled that the alleged denial of benefits way by reason of Plaintiff's disability. In essence, Plaintiff argues that the Troopers overreacted to Plaintiff's disorderly conduct, which was a symptom of his mental illness. However, in the absence of any allegation that the Troopers were aware of Plaintiff's disability, there can be no reasonable inference that the Troopers use of force was by reason of Plaintiff's disability and not by reason of his disorderly conduct.

Id. In contrast to Bou, the Amended Complaint in this case alleges that upon arriving at his girlfriend's home, the State Troopers were expressly informed that Hooftallen had attempted suicide three weeks earlier and was confused and disoriented as a result of medication for Crohn's Disease. It is further alleged that after hearing this information, the State Troopers

9

began teasing and taunting Hooftallen, leading directly to a physical confrontation which ended in Hooftallen's death. Contrary to Defendants' contention, Bou instead supports a finding that Plaintiff has alleged a *prima facie* violation of the ADA and RA. Plaintiff's Amended Complaint alleges that the defendant State Troopers were aware of Hooftallen's mental and physical disabilities and then taunted him to provoke a reaction based upon his conditions. Cf, Mohney, 809 F. Supp.2d at 401 (where Defendant has no knowledge of disability prior to incident, complaint does not sufficient plead a claim within the ADA or RA).

Defendants next challenge whether Plaintiff has stated an ADA or RA claim, contending that the facts alleged do not give rise to a duty to reasonably accommodate Hooftallen's disability by seeking "prompter medical treatment." [ECF No. 19, p. 5]. Defendants concede that there is a duty of reasonable accommodation of a disability in the course of a police response, which can be breached where police are aware of the disability, and yet respond in such a manner as to cause the person to suffer greater injury or indignity than would otherwise occur if the disability were accommodated. [ECF No 19, p. 5]. However, Defendants contend there was no requirement to accommodate Hooftallen's disability because overmedication was at the root of Plaintiff's medical issues, not his disability.

It is recognized that both the ADA and the RA apply to require reasonable accommodation of a disability where first responders are both aware of the disability and can safely modify police practices to accommodate the disability. See, e.g., Heckensweiler v. McLaughlin, 517 F. Supp.2d 707, 718 (E.D. Pa. 2007); Morais v. City of Philadelphia, 2007 WL 853811 *11-13 (E.D. Pa. 2007). Thus, it has been held that if an individual suffers from mental illness, but is not presenting a danger to himself or anyone else, this duty might encompass a requirement on the part of defendants to "better train its police officers to recognize disturbances

that are likely to involve persons with mental disabilities, and to investigate and arrest such persons in a manner reasonably accommodating their disability." Id. "[O]ne potential accommodation … [is] to have the police refrain from taking aggressive action … until [the plaintiff] presented an immediate threat to human life." Id. See also, Hogan v. City of Easton, No. 04-759, 2004 WL 1836992 *6-7 (E.D. Pa. 2004). Thus, where the incident presents an immediate danger because the individual is armed and charging at police, Hainze v. Richards, 207 F.3d 795, 801 (5th Cir. 2000), or the police have no information regarding the potential danger to others who may be present where a call has been made because of a "tense situation," Mohney, supra, then no reasonable accommodation of a disability may be required or possible.

Here, the Defendant State Troopers were aware that Hooftallen was mentally impaired, anxious, reacting to medication for his Crohn's Disease, but unarmed and seated on a couch talking to his mother. Rather than accommodate Hooftallen's mental illness by modifying their approach and providing support until medical treatment arrived, it is alleged that Defendants taunted him until a physical confrontation ensued, and then left him unconscious, in apparent cardiac arrest, and failed to commence CPR. The Court interprets these allegations as stating that Hooftallen was denied reasonable accommodation for his mental and physical disabilities and therefore denied the benefit of reasonably safe emergency medical treatment.

Finally, Defendants argue that the Amended Complaint omits facts establishing that the Commonwealth and State Police "failed to train Troopers or modify procedures to avoid discrimination against persons with bowel disorders," and therefore does not state an ADA or RA claim against either Defendant. [ECF No. 19, p. 7]. Defendants too narrowly construe the Amended Complaint and omit from consideration the allegations of Hooftallen's mental disability. The Amended Complaint alleges that the Commonwealth and State Police failed to

"properly train troopers to have peaceful encounters with mentally and physically disabled persons, and failed to establish a proper policy for handling such encounters, which resulted in the discrimination against Mr. Hooftallen that caused him to suffer his injuries and death." [ECF No. 14, ¶ 90]. Further, it is alleged that Hooftallen "was entitled to the benefit of a lawful exercise of police powers, including the right not to be subjected to an unlawful use of force and the right to emergency medical care." Based upon these allegations, Plaintiff has stated valid claims under the ADA and RA against the Commonwealth and the State Police, and it is respectfully recommended that the Motion to Dismiss Count III be denied. See, e.g., Schorr v. Borough of Lemoyne, 243 F. Supp.2d 232, 238-239 (M.D. Pa. 2003).

### 2. Wrongful Death and Survival Claims

Defendants' Motion to Dismiss also seeks the dismissal of the wrongful death and survival action claims at Counts V and VI of the Amended Complaint. However, Defendants do not cite any grounds in support of their Motion and fail to advance any argument in favor of dismissal. The Court need not consider arguments that have not been developed by the party advancing them. See Conroy v. Leone, 316 F. App'x 140, 144 n. 5 (3d Cir. 2009) ("[w]e find this undeveloped argument has been waived"); Clay v. Holy Cross Hosp., 253 F.3d 1000, 1002 n. 1 (7th Cir. 2001) (holding that perfunctory and undeveloped arguments, and arguments unsupported by pertinent authority, are waived). Accordingly, it is recommended that Defendants' Motion to Dismiss Counts V and VI be denied.

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss filed on behalf of the Pennsylvania State Police and the Commonwealth of Pennsylvania [ECF No. 18] be denied. In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local

Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

          Respectfully submitted,

          <u>/s/ Maureen P. Kelly</u>
          MAUREEN P. KELLY
          UNITED STATES MAGISTRATE JUDGE

Dated: June 21, 2013

cc:    The Honorable Cathy Bissoon
       United States District Judge

       All counsel of record by Notice of Electronic Filing